Darrell WASHINGTON, Petitioner,

v.

Larry JARVIS, Warden Respondent.

No. CIV.A. 02–1798–AM.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 8, 2004.

Darrell Washington, Bland, VA, pro se.

Virginia Theisen, Esquire, Office of the Attorney General, Richmond, VA, Reston, VA, for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

This *pro se* matter is before the Court on petitioner Darrell Washington's ("Washington") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[1] The issue before this Court is whether Washington is entitled to a writ of habeas corpus because the Supreme Court of Virginia's decision in *Commonwealth v. Washington*, 263 Va. 298, 559 S.E.2d 636 (2002), was an objectively unreasonable application of clearly established federal law on double jeopardy or was based on an unreasonable determination of the facts. This case concerns Washington's claim that his second criminal trial violated his Fifth Amendment right against double jeopardy. Washington contends that his first trial ended when the trial judge *sua sponte* declared a mistrial after the jury had been empaneled and sworn. The trial judge declared a mistrial due to a potential shortage of jurors. Washington did not consent to the mistrial. After the mistrial

---

1. Respondent has filed a Motion to Dismiss and Rule 5 Answer. Washington was given the opportunity to file responsive materials, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), and has done so.

was declared, Washington's counsel immediately filed a motion to dismiss the indictment because double jeopardy would bar a second trial against Washington. Nonetheless, the motion was denied and a second trial was held. Washington then was convicted of robbery and the use of a firearm during the commission of a robbery. The Court of Appeals of Virginia held that the Double Jeopardy Clause barred Washington's second trial, reversed the circuit court's judgment, and dismissed Washington's convictions. The Supreme Court of Virginia reversed the judgment of the Court of Appeals and reinstated Washington's convictions, holding that Washington had consented to the mistrial by not explicitly objecting to it, thereby waiving his double jeopardy argument.

Washington argues that the Supreme Court of Virginia's decision was an unreasonable application of existing federal law because it failed to recognize that Washington had preserved his double jeopardy argument by objecting to the trial judge's *sua sponte* declaration of a mistrial. The respondent asserts that the Supreme Court's decision was not contrary to, nor an unreasonable application of a clearly established United States Supreme Court decision, nor was it based on an unreasonable determination of the facts. The Court holds that the Supreme Court of Virginia acted unreasonably in its application of clearly established federal law when it held that Washington's failure to explicitly object to the mistrial necessarily equaled consent to the mistrial. In addition, the Supreme Court of Virginia made an unreasonable determination of the facts by relying on facts that are clearly refuted by the trial transcripts and by disregarding facts on the record that clearly establish Washington did not consent to the trial judge's *sua sponte* declaration of a mistri-

al. Thus, because we hold that the Supreme Court of Virginia's decision was an unreasonable application of clearly established federal law of double jeopardy and an unreasonable determination of the facts in the record, Washington did not waive his objection to the mistrial, and there was no manifest necessity for the mistrial, Washington's petition for a writ of habeas corpus is GRANTED.

## I. BACKGROUND

Washington's first trial for robbery and the use of a firearm during the commission of a robbery began on December 15, 1999, in the Circuit Court of Arlington County, Virginia. (Tr. # 1, 1). Twenty prospective jurors were called to the jury box.[2] (Tr. # 1, 6–10). One of the prospective jurors immediately informed the judge that he had been excused from jury duty for the following day. (Tr. # 1, 7). After determining that the trial might carry over another day, the judge asked if any other jurors had been excused for the next day. *Id.* Four prospective jurors answered affirmatively. *Id.* The judge decided to proceed with jury selection despite the potential for an insufficient number of jurors, stating "[l]et's see if we don't cure this as we go." (Tr. # 1, 8).

Following the introduction of counsel for both the Commonwealth and Washington, the judge asked those jurors that had been excused for the following day to raise their hands. (Tr. # 1, 12). The judge indicated that a similar problem had occurred in a trial the previous day and that, while he had hoped strikes would cure the problem, he had instead been forced to use alternates. *Id.* Counsel proceeded with voire dire. (Tr. # 1, 15–27). Before ordering counsel to exercise their strikes, the judge asked, for the third time, those prospective

**2.** Va.Code Ann. § 19.2–262(B) (Michie 2002) provides that "[t]welve persons from a panel

of twenty shall constitute a jury in a felony case."

jurors excused for the next day to raise their hands. (Tr. # 1, 27–28). At this moment, Washington's counsel requested to approach the bench. (Tr. # 1, 28). Counsel for Washington informed the court that she would not use her strikes based on the availability of jurors. *Id.* The court acknowledged that neither the defense nor the Commonwealth was required to take the prospective juror's availability into consideration when determining who to strike from the jury. *Id.*

While counsel prepared their strikes, the judge instructed the jury as to how the trial would proceed. (Tr. # 1, 29–37). During this address, the judge once again acknowledged the potential problem of a shortage of jurors by stating that "the excused jurors for tomorrow, even though I made it utterly clear to counsel that they are excused, may or may not be stricken, and I will have to deal with that depending on how the strikes go." (Tr. # 1, 30). The judge then proceeded with striking jurors. (Tr. # 1, 37).

Following the administration of strikes, one of the twelve remaining jurors reminded the court that he was excused for the next day. (Tr. # 1, 38). The judge responded "I will get to that now. We'll see what we do with it." (Tr. # 1, 38). How-

ever, before the judge dealt with those remaining jurors that were excused, the jury panel was sworn by the clerk. (Tr. # 1, 38–39). The judge then proceeded to ask once again who was excused for the next day. (Tr. # 1, 39). One juror answered affirmatively and the judge asked counsel if they wanted alternates. *Id.* Because neither counsel responded immediately, the judge decided that alternates were necessary. *Id.*

While acknowledging that a statutory procedure existed for selecting alternates,[3] the judge suggested a different procedure whereby the two remaining jurors, who had not been called in the original twenty, would be put in a pool with two jurors who had been previously stricken. (Tr. # 1, 39–40). Out of this pool of four, each side would have one strike leaving two alternates. (Tr. # 1, 40). After it became clear to the judge that this process was not acceptable to counsel, the jury panel and remaining prospective jurors were directed to leave the courtroom. (Tr. # 1, 41). Following the jurors' departure, both counsel for Washington and the Commonwealth further objected to the procedure suggested by the judge because neither wanted to have to select alternate jurors from people they had previously struck.

---

3. Va.Code Ann. § 8.01–360 (Michie 2002) in part provides that:

[w]henever in the opinion of the court the trial of any criminal or civil case is likely to be a protracted one, the court may direct the selection of additional jurors who shall be drawn from the same source, in the same manner and at the same time as the regular jurors. These additional jurors shall have the same qualifications, and be considered and treated in every respect as regular jurors and be subject to examination and challenge as such jurors. When one additional juror is desired, there shall be drawn three veniremen, and the plaintiff and defendant in a civil case or the Commonwealth and accused in a criminal case shall each be allowed one peremptory chal-

lenge. When two or more additional jurors are desired there shall be drawn twice as many venireman as the number of additional jurors desired. The plaintiff and defendant in a civil case or the Commonwealth and accused in a criminal case shall each be allowed one additional peremptory challenge for every two additional jurors. The court shall select, by lot, those jurors to be designated additional jurors. The plaintiff and defendant in a civil case or the Commonwealth and accused in a criminal case shall be advised by the court which jurors are additional jurors at the time the jury is impaneled; however, in no event, shall any juror be made aware of his status as a regular or additional juror until he is excused as a juror.

(Tr. #1, 41–44). The judge suggested that he call the two jurors who were not previously called and allow the defense to have one strike leaving one alternate. (Tr. #1, 45). Again, both counsel objected. (Tr. #1, 45–48).

Defense counsel stated that the judge was aware of the potential for an insufficient number of jurors early on and that the court should have taken those jurors excused for the next day out of the pool. (Tr. #1, 45). Counsel continued that had this in fact resulted in an insufficient number of potential jurors, the judge could have continued the case until enough jurors were available. (Tr. #1, 46). Finally, defense counsel objected to the fact that the alternate juror would know that he or she was an alternate. (Tr. #1, 46–47). Counsel for the Commonwealth objected because he would be out of a strike and the defense would be provided the opportunity to pick the alternate. (Tr. #1, 48). The following exchange ensued:

THE COURT: 8.01–360 says, In no event shall alternates be told they are alternates.

MR. HUDGINS [For the Commonwealth]: I have—

THE COURT: You are both objecting?

MR. HUDGINS: Well, I'm objecting not so much because the other person is going to know they are an alternate, but because I don't have a decision in who gets to be the alternate.

THE COURT: That's a mistrial.

MS. WOLFE [For Defendant Washington]: Your Honor, and I'm going to say this—

THE COURT: Now you are going to have jeopardy.

MS. WOLFE: *We have jeopardy,* but the Court—

THE COURT: The Commonwealth won't agree to the cure.

MR. HUDGINS: There wasn't a jury sworn.

THE COURT: No, sir.

MS. WOLFE: The jurors were sworn.

THE COURT: I tried to get this case tried and tried to get it done, but we are going to fight over this. And you want your statutory right. You want your statutory right.

We do not have sufficient jurors to have a replacement for the juror sworn.

That's a mistrial.

MS. WOLFE: Thank you, Your Honor.

MR. HUDGINS: I'm going to ask, Your Honor—could we place it on the docket for another day?

THE COURT: Well, of course that's what we're going to do.

MS. WOLFE: *Well, I think there's really an argument about—*

THE COURT: *Now she's going to claim that jeopardy attaches.*

MS. WOLFE: *Well, it did attach because the jurors were sworn.*

*We will get the transcript—*

THE COURT: *Now she is going to move to dismiss on double jeopardy grounds.*

*You're objecting to my attempted cure to get a jury in the box,* and you have a right to do that, and you have statutory authority for it.

MS. WOLFE: And we can set a date. (Tr. #1, 48–50) (emphasis added).

After a *sua sponte* mistrial was twice declared, and the jury panel and prospective jurors excused, the following interaction occurred:

THE COURT: The alternative, facing a double objection, each with a correct legal basis, was to try the case and see if it got in and done by 6 o'clock tonight.

It is 12:18 on the Court's clock. I'm told there were seven or eight Commonwealth witnesses. Both attorneys imply that they couldn't do that.

Therefore, rather than make this jury wait around all day and see if it can be done properly, the mistrial for the inability to have 12 jurors hear and decide this case properly is equivalent to a sick juror or a missing juror, taking us under the 12.

Pick a new date.

Sorry to do that to all of the witnesses and the victim and everybody else, but that's—

MR. HUDGINS: Your Honor, may I just be heard?

THE COURT:—required by Virginia law.

MR. HUDGINS: Your Honor, may I be heard with respect to the issue of whether there is a mistrial or not?

My understanding is, Your Honor, we were about—I don't recall—you correct me if I'm wrong—when we picked our 12 whether or not the clerk actually swore them in.

THE COURT: The second oath was given.

MR. HUDGINS: Because I thought we were about to pick—

THE COURT: The second oath was given. The jury was sworn.

It is very important constitutionally. The jury was sworn. There was no objection to them. The Court went ahead with the clerk in the usual process. No comment was made. That jury was sworn.

MR. HUDGINS: Well, I guess, Your Honor, just so the Court understands I didn't understand that because I thought we were about to pick an alternate.

I couldn't see how swearing the jury—

THE COURT: The expectation of the selection of alternates did not make it unclear that the second oath was being given.

Suggest a new trial date. Talk to the witnesses if you want.

MR. HUDGINS: March 6, Your Honor.

THE COURT: All witnesses and the defendant are told the case will be tried on 6 March.

MR. HUDGINS: I would ask the Court to recognize—

THE COURT: The witnesses are recognized in order to be back here for trial on 6 March.

MR. HUDGINS: Thank you.

THE COURT: Thank you.

MS WOLFE: And could I ask that a transcript of the trial be done fairly quickly?

(Tr. # 1, 52–54).

The second trial was held on March 6, 2000, before a new judge. Prior to jury selection in the second trial, defense counsel moved the court to dismiss the case on double jeopardy grounds. (Tr. # 2, 3). The court considered the motion and found that the issue was whether there was a manifest necessity for a new trial. (Tr. # 2, 22). After acknowledging that the court in the first trial was aware of problems with jurors from the start, the second trial judge denied Washington's motion, reasoning that a finding of manifest necessity is within the discretion of the trial court. *Id.* The judge continued stating, "I question whether this case should have gone forward at that point given what happened, but that's me second-guessing, looking at it in hindsight." (Tr. # 2, 28). Thereafter, Washington was tried and convicted of robbery and the use of a firearm in the commission of robbery.

Washington appealed his conviction to the Court of Appeals of Virginia. On appeal, Washington asserted that (1) his second trial violated the Double Jeopardy Clause of the Fifth Amendment and (2) the evidence at trial was insufficient to support his conviction. By Opinion dated March 27, 2001, the Court of Appeals reversed and dismissed Washington's convictions, holding that double jeopardy barred his second trial.[4] *Washington v. Commonwealth,* 35 Va.App. 202, 543 S.E.2d 638, 646 (2001). The Court summed up its decision by stating:

> [W]e hold that when the jury was empanelled and sworn, the trial judge was aware of the issues which led to his later declaration of the mistrial. He failed to consider possible alternatives, such as a continuance, prior to his *sua sponte* declaration of a mistrial. Thus, because no manifest necessity required the trial judge to declare a mistrial, the double jeopardy prohibition bars the retrial of appellant.

*Id.*

The Commonwealth appealed the reversal to the Supreme Court of Virginia. The appeal was denied by Order dated July 25, 2001. *Commonwealth v. Washington,* R. No. 010913 (Va. July 25, 2001). The Commonwealth filed a petition for rehearing, which the Supreme Court of Virginia denied on September 14, 2001. *Commonwealth v. Washington,* R. No. 010913 (Va. Sept. 14, 2001). However, by Order dated September 21, 2001, the Supreme Court of Virginia granted rehearing and allowed the Commonwealth to appeal. *Commonwealth v. Washington,* R. No. 010913 (Va. Sept. 21, 2001).

With three justices dissenting, the Supreme Court of Virginia reversed the Court of Appeals judgment and reinstated Washington's convictions on March 1, 2002. *Commonwealth v. Washington,* 263 Va. 298, 559 S.E.2d 636 (2002). The four justice majority did not address whether manifest necessity required a mistrial; instead, the Court held that Washington had implicitly consented to the mistrial thereby waiving his double jeopardy protections. *Id.* at 639. The dissent countered that Washington had objected effectively to the mistrial "because the original trial judge, the Commonwealth, and the subsequent trial judge were aware that Washington was asserting that a retrial would violate his double jeopardy rights." *Id.* at 642. The dissent continued that because Washington had not consented to the mistrial, manifest necessity was the issue to be considered. *Id.* at 644. The dissent found that no manifest necessity existed and stated that they would affirm the Court of Appeals judgment. *Id.* at 645.

Washington filed a petition for rehearing, which the Supreme Court of Virginia denied on April 19, 2002. *Commonwealth v. Washington,* R. No. 010913 (Va. Apr. 19, 2002). On June 10, 2002, Washington filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. In his state habeas petition, he raised the following claims:

> A. Defense counsel deprived petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments by failing to expressly object to the trial court's arbitrary declaration of a mistrial.
>
> B. Defense counsel deprived petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments by failing on appeal to address the actions of the trial court in depriving petitioner of the opportunity to make an express objection to the court's arbitrary declaration of a mistrial and petitioner's actual innocence.

---

4. The Court of Appeals did not address Washington's second claim.

C. The judicial actions of the trial court deprived the petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments because:

 i. the trial judge clearly understood the implicit jeopardy objection made by defense counsel to his arbitrary declaration of a mistrial after the jury had been sworn; and

 ii. the trial judge blocked defense counsel from making an express objection by his continual interruptions.

D. The majority of the Supreme Court of Virginia deprived petitioner of his constitutional rights under the Fifth and Fourteenth Amendments by:

 i. failing to recognize that defense counsel had in fact implicitly objected to the arbitrary declaration of a mistrial preserving the double jeopardy issue for appeal; and

 ii. failing to recognize that petitioner was actually innocent.

E. The majority of the Supreme Court of Virginia deprived petitioner of his constitutional rights under the Fifth and Fourteenth Amendments by:

 i. failing to address petitioner's claim that the evidence presented at trial was insufficient to support a conviction for robbery and use of a firearm in the commission of a robbery; or

 ii. failing to remand the issue back to the Court of Appeals of Virginia for consideration.

On November 13, 2002, the Supreme Court of Virginia dismissed Washington's petition. *Washington v. Warden,* R. No. 021386 (Va. Nov. 13, 2002).

On November 21, 2002, Washington filed the instant federal habeas corpus petition, raising the same claims he raised in his state habeas petition and two additional claims. Washington's claims are as follows:

I. The trial court violated petitioner's constitutional rights under the Fifth Amendment by declaring a mistrial over petitioner's objection and petitioner was subsequently retried for the same offenses.

II. The trial court violated petitioner's constitutional rights under the Fifth Amendment by declaring a mistrial without a manifest necessity for such mistrial and petitioner was subsequently retried for the same offenses.

III. Defense counsel deprived petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments by failing to expressly object to the trial court's arbitrary declaration of a mistrial.

IV. Defense counsel deprived petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments on appeal by:

 a. failing to address the actions of the trial court in depriving petitioner of the opportunity to make an express objection to the court's arbitrary declaration of a mistrial; and

 b. failing to address petitioner's claim of actual innocence.

V. The trial court deprived the petitioner of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments because:

 a. the trial judge clearly understood the implicit jeopardy objection made by defense counsel to his arbitrary declaration of a mistrial after the jury had been sworn; and

 b. the trial judge blocked defense counsel from making an express objection by his continual interruptions.

VI. The majority of the Supreme Court of Virginia deprived petitioner of his constitutional rights under the Fifth and Fourteenth Amendments by:

 a. failing to recognize that defense counsel had in fact implicitly objected to the arbitrary declaration of a mistrial preserving the double jeopardy issue for appeal; and

 b. failing to recognize that petitioner was actually innocent.

VII. The majority of the Supreme Court of Virginia deprived petitioner of his constitutional rights under the Fifth and Fourteenth Amendments by:

 a. failing to address petitioner's claim that the evidence presented at trial was insufficient to support a conviction for robbery and use of a firearm in the commission of a robbery; or

 b. failing to remand the issue back to the Court of Appeals of Virginia for consideration.

Because the Court finds that Washington is entitled to habeas relief as to claim VI(a), we do not address Washington's additional claims.

## II. EXHAUSTION AND PROCEDURAL DEFAULT

In reviewing a petition under 28 U.S.C. § 2254, a federal court must determine whether the petitioner has exhausted his claims before the appropriate state courts and whether those claims are barred by a procedural default. Prior to filing a petition for federal habeas review, a petitioner must exhaust his state remedies by fairly presenting the substance of the claim to the state's highest court. *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). In the instant case, respondent admits that Washington has exhausted all of his claims and further does not assert that claim VI(a) is procedurally defaulted.

## III. DISCUSSION

### A. Standard of Review

Washington's claim must be reviewed on the merits using the standard set forth in 28 U.S.C. § 2254(d). This Court may grant habeas relief only if the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. *See Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court determination meets the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413, 120 S.Ct. 1495. Under the "unreasonable application" standard, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The unreasonable application standard further applies if the state court " 'was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled.' " *Bates v. Lee,* 308 F.3d 411, 417 (4th Cir.2002) (quoting *Ramdass v. Angelone,* 530 U.S. 156, 166, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000)). Moreover, an objective standard should be used to determine whether the state

court's application of federal law was unreasonable. *Williams,* 529 U.S. at 409–10, 120 S.Ct. 1495.

## B. Analysis

This Court finds that Washington objected to the trial court's *sua sponte* declaration of a mistrial. Moreover, the Court concludes that the Supreme Court of Virginia's finding that Washington waived his double jeopardy protections because he failed to explicitly object to the mistrial was an unreasonable application of existing federal law and an unreasonable determination of the facts. Because the Court finds that the Supreme Court of Virginia was unreasonable in failing to recognize that Washington objected to the mistrial and the Court further finds no manifest necessity for the mistrial, we grant Washington the writ of habeas corpus.

### 1. Unreasonable Application of Existing Federal Law

#### a. Double Jeopardy Legal Principles

■ The following well-established legal principles have emerged in double jeopardy jurisprudence and are relevant to the present analysis. The Fifth Amendment of the Constitution of the United States provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause protects a criminal defendant from multiple prosecutions for the same offense, affording a defendant the right to have his "trial completed by the first jury empaneled to try him." *Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). In a jury trial, jeopardy attaches once the jury is empaneled and sworn. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) (citations omitted).

■ There are certain situations, however, when a criminal defendant may be retried for the same offense without offending double jeopardy principles. *Downum v. United States,* 372 U.S. 734, 735–36, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Absent judicial or prosecutorial misconduct intended to "goad" the defendant into moving for a mistrial, double jeopardy principles will not bar reprosecution where a criminal defendant consents to the declaration of a mistrial. *Kennedy,* 456 U.S. at 673–76, 102 S.Ct. 2083. If a criminal defendant does not consent to a mistrial, double jeopardy principles will bar a retrial unless the trial court determines that there was a "manifest necessity" for the mistrial. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). When a court declares a mistrial *sua sponte,* a manifest necessity determination is the appropriate test for determining whether a defendant may be retried without violating double jeopardy principles. *United States v. Sanford,* 429 U.S. 14, 15, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976).

Consent to a mistrial need not be "knowing, intelligent, and voluntary." *See United States v. Dinitz,* 424 U.S. 600, 609 n. 11, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The United States Supreme Court, however, instructs that courts "indulge every reasonable presumption against [the] waiver" of fundamental rights. *See, e.g., Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). This instruction dictates that courts should not lightly impute implied consent to uninformed silence. Furthermore, the Supreme Court "resolve[s] any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.'" *Downum,* 372 U.S. at 738, 83 S.Ct. 1033 (quoting *United States v. Watson,* 28 F. Cas. 499, 501 (1868)). We turn now to the Supreme Court of Virginia's application of these well-established legal principles to Washington's appeal.

b. The Supreme Court of Virginia Decision

In its opinion, a majority of the Supreme Court of Virginia began by identifying some of the basic legal principles governing double jeopardy jurisprudence. The Supreme Court of Virginia acknowledged a defendant's right to have his trial completed by the first jury empaneled to try him in order to protect the defendant from being twice placed in jeopardy of life or limb. *Commonwealth v. Washington,* 263 Va. 298, 559 S.E.2d 636, 638 (2002) (citing U.S. CONST. amend. V; *Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). The Court continued by noting that a defendant may relinquish, by express or implied waiver, the double jeopardy protections provided by the Fifth Amendment. *Id.* Next, the majority cited decisions by several United States Courts of Appeals for the principle "that a defendant's consent to a mistrial is implied when the defendant has an opportunity to object but fails to do so" and, therefore, failure to object to a mistrial constitutes waiver of double jeopardy protections. *Id.* at 639 (citing *United States v. Buljubasic,* 808 F.2d 1260, 1265–66 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987); *United States v. Puleo,* 817 F.2d 702, 705 (11th Cir.), *cert. denied,* 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987); *United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973); and *Peretz v. United States,* 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (citing *United States v. Bascaro,* 742 F.2d 1335, 1365 (11th Cir.1984), *cert. denied sub nom. Hobson v. United States,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985), and *cert. denied sub nom. Waldrop v. United States,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985))). Finally, the Supreme Court of Virginia discussed the Commonwealth's contemporaneous objection rule, which bars litigants from raising issues on appeal when no objections were raised to the circuit court's ruling on the issue. *Id.*

After identifying the above principles, the majority of the Supreme Court of Virginia found that Washington implicitly consented to the trial court's *sua sponte* declaration of a mistrial, thereby waiving his double jeopardy protections. *Id.* The Supreme Court of Virginia reached this conclusion by announcing a bright-line rule that double jeopardy protections are waived absent an objection to a mistrial and applying the principle to facts allegedly gleaned from the trial transcripts. *Id.* at 639–40. First, the Court reasoned that Washington had consented to the *sua sponte* mistrial because nowhere in the record did Washington's counsel explicitly object to the mistrial. *Id.* at 639. Second, the Supreme Court relied on the fact that Washington's counsel "requested that the court set a date for a new trial and she participated, without objection, in the selection of the new trial date." *Id.* at 640. We find that the decision of the Supreme Court of Virginia was an unreasonable application of established United States Supreme Court law. Furthermore, in light of the trial transcripts, the Supreme Court of Virginia's factual determination was altogether unreasonable.

c. Application of Federal Law

The writ of habeas corpus may be granted if a state court's adjudication was an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). A state court acts unreasonably in its application of clearly established federal law if the court was unreasonable "in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." *Bates v. Lee,* 308 F.3d 411, 417 (4th Cir.2002) (quoting *Ramdass v. Angelone,* 530 U.S. 156, 166, 120 S.Ct.

2113, 147 L.Ed.2d 125 (2000)). The Supreme Court of Virginia primarily relied on the legal principle asserted in its opinion that a defendant waives his double jeopardy protections if the defendant had the opportunity to object to a mistrial but did not explicitly express such objection. *Commonwealth v. Washington*, 263 Va. 298, 559 S.E.2d 636, 639 (2002).

■ In support of this bright-line rule, the Supreme Court of Virginia cited cases from the Second, Seventh, and Eleventh Circuits. Reliance on these cases was erroneous. None of the cases cited announce such a bright-line rule. Nonetheless, the Supreme Court of Virginia held that because Washington did not expressly object to the *sua sponte* mistrial, he had consented to it, thereby waiving his double jeopardy protections. *Id.* The Supreme Court of Virginia reached this conclusion despite several factors evidencing Washington's implied objection to the *sua sponte* mistrial. The ultimate result of the Supreme Court of Virginia's decision is that a defendant will be presumed to consent to all mistrials unless he voices an express objection to the mistrial declared. The court's application of such a rigid rule was an unreasonable application of clearly established federal law because the court refused to extend United States Supreme Court legal principles, which dictate against presuming a defendant's waiver of constitutional rights.

In reaching its conclusion that consent to a mistrial is necessarily implied when a defendant has an opportunity to object to a mistrial but does not expressly do so, the Supreme Court of Virginia relied on *United States v. Buljubasic*, 808 F.2d 1260, 1265–66 (7th Cir.), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987); *United States v. Puleo*, 817 F.2d 702, 705 (11th Cir.), *cert. denied*, 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987); *United States v. Goldstein*, 479 F.2d 1061, 1067

(2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973). *Commonwealth v. Washington*, 263 Va. 298, 559 S.E.2d 636, 639 (2002). The cases relied on do not support the principle that failure to expressly object to a mistrial constitutes consent to the mistrial. Instead, these cases simply acknowledge that consent to a mistrial may be implied and failure to object to a mistrial when there is an opportunity to do so may be considered as a factor in determining whether a defendant has in fact consented to a mistrial.

In *United States v. Buljubasic*, 808 F.2d 1260 (7th Cir.), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987), the defendant argued that the double jeopardy clause barred a second trial because his previous joint trial had been severed and there was no manifest necessity for the mistrial. *Id.* at 1264. Although defendant had moved for severance and a mistrial "too many times to count," he argued that the judge surprised him with the mistrial declaration and that his failure to object could not be construed as consent. *Id.* at 1265. The court in *Buljubasic* held that, in certain circumstances, failure to object *can* be construed as consent and concluded that because the defendant had filed multiple motions for severance that would necessarily result in a mistrial, had not withdrawn the motions, and had not expressed *any* concern at the judge's declaration of the mistrial, he had consented to the mistrial. *Id.* at 1265–66. Nothing in *Buljubasic* suggests that failure to explicitly object to a mistrial constitutes consent to that mistrial as the Supreme Court of Virginia holds. In fact, the court discussed another Seventh Circuit case in which the Court found that defendant's failure to explicitly object did *not* imply consent simply because the case appeared to be proceeding favorably for the defendant. *Id.* at 1266 (discussing *United States ex rel. Clauser v. McCevers*, 731 F.2d 423, 426

(7th Cir.1984)).[5] As an example of a situation where silence would constitute consent to a mistrial, the Seventh Circuit opined that "[i]f a judge should say: 'I think a mistrial would be a good idea, but think this over and let me know if you disagree,' the defendant's silence would be assent." *Id.* at 1265–66.

The Supreme Court of Virginia next relied on *United States v. Puleo,* 817 F.2d 702, 705 (11th Cir.), *cert. denied,* 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987), in further support for the notion that "a defendant's consent to a mistrial is implied when a defendant had an opportunity to object to a mistrial but failed to do so." *Commonwealth v. Washington,* 263 Va. 298, 559 S.E.2d 636, 639 (2002). While the Court in *Puleo* found that the defendant consented to a mistrial because she did not object, the court did not rely solely on defendant's failure to object. In fact, the court stated that consent may be implied from the "totality of the circumstances attendant on the declaration of a mistrial." *Puleo,* 817 F.2d at 705 (citing *United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973)). Analyzing all of the circumstances surrounding a mistrial declaration is a very different analysis than the bright-line rule the Supreme Court of Virginia relied on, using *Puleo* as support. Furthermore, the Eleventh Circuit has stated that a formal objection is not needed to show lack of consent to a mistrial where the court *sua sponte* declares a mistrial without obtaining the defendant's consent. *Abdi v. Georgia,* 744 F.2d 1500, 1502–03 & n. 3 (11th Cir.1984).

Finally, the Supreme Court of Virginia cited *United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973), as support for its bright-line rule. The court in *Goldstein,* however, found that defendants consented to the mistrial declared not because defense counsel failed to object to the mistrial, but because defendants had earlier moved for a mistrial and failed to communicate to the judge that a mistrial was no longer sought. *Id.* at 1067. The Court announced that the test for determining implied consent to a mistrial is "the totality of the circumstances attendant on a declaration of mistrial." *Id.* In fact, the Court in *Goldstein* stated that it would not go so far as to hold that consent to a mistrial would be presumed from failure to expressly object, finding instead that failure to object should be only one of several factors considered. *Id.* at 1067 n. 11. Thus, *Goldstein* does not stand for the conclusion the Supreme Court of Virginia used it to support.

Not only did the Supreme Court of Virginia misconstrue the opinions it utilized to support its ruling that failure to explicitly object to a mistrial always implies consent to a mistrial, but the Court also unreasonably failed to extend well established and controlling United States Supreme Court legal principles to the instant situation. According to the United States Supreme Court, where a mistrial is declared *sua sponte,*

---

5. In addition to *McCevers,* the Seventh Circuit on other occasions has found silence or failure to explicitly object to a mistrial insufficient to imply consent to the same mistrial. *See, e.g., United States v. Combs,* 222 F.3d 353, 359 (7th Cir.2000) (declining to construe silence as consent to a mistrial and instead construing defendant's objection to the dismissal of his attorney as an objection to the mistrial because defendant stated that he did not want to waive any of his rights). The Seventh Circuit also has stated that they "will not search for consent [to a mistrial] where it is not affirmatively given and clearly evident on the record." *Lovinger v. Circuit Court of the 19th Judicial Circuit,* 845 F.2d 739, 744 (7th Cir.1988) (citing *Clauser,* 731 F.2d at 426).

the classical test for determining whether the defendants may be retried without violating the Double Jeopardy Clause is stated in Mr. Justice Story's opinion for this Court in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824): '...the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.'

*United States v. Sanford,* 429 U.S. 14, 15–16, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976). Further, the United States Supreme Court has oft stated that courts should "indulge every reasonable presumption against [the] waiver" of fundamental rights. *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). Any doubts should be resolved "in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." *Downum v. United States,* 372 U.S. 734, 738, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (quoting *United States v. Watson,* 28 F. Cas. 499, 501 (1868)). The Supreme Court of Virginia did not extend these governing legal principles to the case at hand; instead, the court announced a bright-line rule that resulted in a presumption of waiver of Washington's constitutional double jeopardy protection despite the fact that Washington had immediately asserted a double jeopardy objection.

In addition to finding that the Supreme Court of Virginia erroneously interpreted case law and failed to apply controlling legal principles announced by the United States Supreme Court, this Court finds these errors to be objectively unreasonable. The Supreme Court of Virginia failed to cite authority for its presumed bright-line rule that failure to explicitly object to a mistrial constitutes consent to a mistrial regardless of the circumstances surrounding the mistrial declaration. This lack of support, combined with the Supreme Court of Virginia's failure to extend principles announced by the United States Supreme Court that favor protecting the constitutional rights of defendants, was unreasonable. The decision was all the more unreasonable in light of the Supreme Court of Virginia's unreasonable factual determination, which is discussed below.

## 2. Unreasonable Determination of the Facts

 This Court may grant the writ of habeas corpus if it finds that the state court's adjudication was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The Supreme Court of Virginia's finding that Washington failed to object to the trial judge's *sua sponte* declaration of a mistrial was an unreasonable determination of the facts.

The Supreme Court of Virginia, in reviewing the same trial transcripts now before the Court, determined the facts to be as follows:

> [D]efendant's counsel in this case did not object to a new trial once the circuit court had declared a mistrial. Indeed, defendant's counsel in this case actually requested that the court set a date for a new trial and she participated, without objection, in the selection of a new trial date. Moreover, the record in this case clearly shows that during the first trial, defendant's counsel made clear and unequivocal objections to rulings of the circuit court that were adverse to her position. When she desired to object, she made specific objections. And, as we have already stated, she made no such objection to the court's declaration of a mistrial.

*Commonwealth v. Washington,* 263 Va. 298, 559 S.E.2d 636, 640 (2002). This de-

termination of the facts is demonstrably unreasonable when compared to the transcript of the proceeding. Each factual determination will be addressed in turn.

The Supreme Court of Virginia's determination that Washington's counsel failed to object to a new trial is not supported by the record.[6] Washington's counsel did not state expressly "Your Honor, I object to the Court granting a mistrial in this case," however, reading Washington's counsel's statements, arguments, and the judge's colloquy it is unmistakable that the lawyers and the judge were focused on the issue of double jeopardy, and the Supreme Court of Virginia's determination to the contrary is not reasonable in light of the transcripts. On two separate occasions after the judge declared a mistrial without any advance warning to the lawyers, Washington's counsel explicitly stated that double jeopardy clause protections applied and might bar retrial. First, she declared "[w]e have jeopardy." (Tr. # 1, 48). Later she stated, "[w]ell, [jeopardy] did attach because the jurors were sworn. We will get the transcript—." (Tr. # 1, 49). The trial judge acknowledged that Washington had jeopardy but proceeded to explain the necessity for his *sua sponte* mistrial declaration and once again stated "that's a mistrial." (Tr. # 1, 49). At this point, having already made her double jeopardy objection known once, Washington's counsel thanked the judge and then immediately stated "Well, I think there's really an argument about—." *Id.* Before counsel could finish, the trial judge interrupted stating "[n]ow she's going to claim that jeopardy attaches." *Id.* Counsel affirmed that she was claiming jeopardy had attached. *Id.* The trial judge then stated

"[n]ow she is going to move to dismiss on double jeopardy grounds." *Id.* Before the second trial began, Washington filed a pretrial motion to dismiss on double jeopardy grounds.

The dissenting opinion in the Supreme Court of Virginia acknowledged that Washington's counsel objected to the mistrial, stating:

> The record further establishes that the judge was fully aware of the constitutional implications of his *sua sponte* declaration of a mistrial. Indeed, he explained to the Commonwealth's Attorney that "[i]t is very important constitutionally. The jury was sworn." Moreover, the judge was aware that Washington was not consenting to a mistrial in light of Washington's repeated assertions that jeopardy had attached when the jury was sworn. Again, the judge stated that "[n]ow [Washington's counsel is] going to claim that jeopardy attaches." In this context, the judge's statements reflect that he considered the inability properly to select an alternate juror to create a manifest necessity for a mistrial so that a retrial would not violate Washington's double jeopardy rights. The judge was simply wrong.

*Commonwealth v. Washington*, 263 Va. 298, 559 S.E.2d 636, 642 (2002).

The Supreme Court of Virginia's determination of the facts relating to contemporaneous objection was unreasonable in light of the proceeding transcripts, which clearly show that Washington's counsel objected to the declaration of the mistrial. The Double Jeopardy Clause protects a defendant against a second prosecution for

---

6. The dissent in the Supreme Court of Virginia analyzed the facts surrounding the issue of waiver and contemporaneous objection and correctly applied the totality of circumstances test to the facts and concluded that Washington's objection to the mistrial was clearly made and timely asserted by counsel prior to discharge of the jury. *Commonwealth v. Washington*, 263 Va. 298, 559 S.E.2d 636, 642–44 (2002) (dissenting opinion).

the same offense. *Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Thus, by its very nature, an assertion of a double jeopardy defense embodies an objection to a second trial in which the person is to be prosecuted for the same offense. Therefore, it was unreasonable to conclude, as the Supreme Court of Virginia did, that Washington's counsel failed to object to a second trial when her words could have no other meaning. Moreover, it is clear that counsel brought Washington's jeopardy argument to the trial court's attention because the judge stated that "[n]ow she is going to move to dismiss on double jeopardy grounds." (Tr. # 1, 49). Indeed, prior to Washington's second trial, counsel moved to dismiss on the basis of double jeopardy.

Next, the Supreme Court of Virginia found that Washington's counsel asked the court to set a date for the second trial and participated in the date selection without objection. *Commonwealth v. Washington,* 263 Va. 298, 559 S.E.2d 636, 640 (2002). In reaching this conclusion, the Supreme Court of Virginia relied exclusively on the statement by Washington's counsel that "we can set a date [for the second trial]." (Tr. # 1, 50). However, the Supreme Court of Virginia ignored the timing of counsel's statement and the context in which it was made. After the judge declared a *sua sponte* mistrial, the Commonwealth, not Washington's counsel, requested that the second trial be put on the docket for another day. (Tr. # 1, 49). The judge responded that the second trial would indeed be set for another day. *Id.* Immediately thereafter, Washington's counsel again stated that there was an argument about double jeopardy and that she would get the transcripts to show as much. *Id.* It was not until after the court acknowledged that she was objecting and would be moving to dismiss on double jeopardy grounds that Washington's counsel stated that a second trial date could be set as requested by the Commonwealth. (Tr. # 1, 49–50). Next, the trial judge dismissed the jury and provided what appears to be a manifest necessity argument. (Tr. # 1, 50–51). The trial judge and the Commonwealth then proceeded to set a date without *any* participation whatsoever by Washington's counsel. (Tr. # 1, 53–54). The only comment made by Washington's counsel during date selection was "[a]nd could I ask that a transcript of the trial be done fairly quickly?" (Tr. # 1, 54). This cannot be construed as participation in setting the date for the second trial. Moreover, even if Washington's counsel had requested a new trial date and participated in selecting the date, such actions alone are not evidence of consent to a mistrial. If such participation were construed as consent, defense lawyers in the future would be required to obstinately refuse to participate in date selection with the court for fear of forfeiting a double jeopardy argument on behalf of their clients. Such an outcome is extremely unreasonable and would result in inefficiency and disorder in trial courts.

■ Finally, in concluding that Washington consented to the mistrial, the Supreme Court of Virginia relied on the fact that Washington's counsel did not make an explicit objection to the *sua sponte* mistrial when on other occasions she made "clear and unequivocal objections." *Commonwealth v. Washington,* 263 Va. 298, 559 S.E.2d 636, 640 (2002). While the Supreme Court of Virginia may be correct that Washington's counsel did not explicitly state "I object to the mistrial," she did explicitly make an objection on double jeopardy grounds and, implicit in counsel's double jeopardy argument, was an objection to the *sua sponte* mistrial. Furthermore, it is clear from the transcripts that all present understood Washington's counsel to have objected to the mistrial. The

trial judge argued that there was a manifest necessity for his *sua sponte* declaration of a mistrial. Significantly, a showing of manifest necessity is only necessary to prevent a successful double jeopardy argument when a defendant did not consent to a mistrial. *United States v. Dinitz*, 424 U.S. 600, 606–07, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (citations omitted). It also appears from the record before us that the Commonwealth understood Washington to have objected to the mistrial. As further support, despite ample time during the exchange surrounding the second trial judge's consideration of Washington's motion to dismiss on double jeopardy grounds, the Commonwealth offered no argument that Washington had not objected to the mistrial. (Tr. # 2, 3–28). Looking at the totality of the circumstances surrounding the trial judge's declaration of a *sua sponte* mistrial, it is clear that Washington did not consent to the mistrial and that Washington preserved his double jeopardy argument.

We hold that the factual determination made by the Supreme Court of Virginia was unreasonable because the court relied on facts that are not evidenced by the trial transcripts, such as the fact that Washington's counsel did not object to a second trial, and that Washington's counsel requested and participated in the selection of a second trial date. Furthermore, everyone involved understood that Washington objected to the mistrial. The trial judge presiding over the exchange at issue, counsel for the Commonwealth in the proceedings, and the second trial judge reviewing the motion to dismiss on double jeopardy grounds all recognized and understood Washington to have objected to the mistrial. It was unreasonable for the Supreme Court of Virginia to misconstrue the record by taking statements out of context in order to find that Washington consented to the mistrial, particularly when this incorrect interpretation led to the deprivation of a defendant's valued right not to be twice tried for the same offense. Because we find that the Supreme Court of Virginia acted unreasonably in its application of federal law, as determined by the United States Supreme Court, and in its determination of the facts, we must ascertain whether there was a manifest necessity for the mistrial declared.

### 3. Manifest Necessity

■ A mistrial declared without a defendant's consent will bar retrial of the defendant on double jeopardy grounds unless it is determined that there was a manifest necessity for the mistrial. *E.g.*, *United States v. Sanford*, 429 U.S. 14, 15–16, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976) (citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). "[T]he key word 'necessity' cannot be interpreted literally; instead . . . there are degrees of necessity and . . . a 'high degree' [is required] before concluding that a mistrial is appropriate." *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The prosecution bears the heavy burden of establishing a manifest necessity in order to avoid a double jeopardy bar to a retrial. *Id.* at 505, 98 S.Ct. 824. Furthermore, "any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited uncertain, and arbitrary judicial discretion,'" is resolved in favor of the defendant. *Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (quoting *United States v. Watson*, 28 F. Cas. 499, 501 (1868)).

■ In declaring a mistrial without the consent of the defendant, a trial judge is to "act[ ] responsibly and deliberately, and accord[ ] careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding." *Arizona v. Washington*, 434 U.S. 497, 516, 98

S.Ct. 824, 54 L.Ed.2d 717 (1978). A trial judge exercises sound discretion when determining whether a manifest necessity exists to declare a *sua sponte* mistrial by taking all the surrounding circumstances into account. *See United States v. Jorn*, 400 U.S. 470, 487, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (citing *Perez*, 22 U.S. (9 Wheat.) at 580). "In order to determine if the mistrial was required by manifest necessity, the critical inquiry is whether less drastic alternatives were available." *United States v. Shafer*, 987 F.2d 1054, 1057 (4th Cir.1993) (citing *Harris v. Young*, 607 F.2d 1081, 1085 n. 4 (4th Cir.1979)); *see also Jorn*, 400 U.S. at 486–87, 91 S.Ct. 547 (holding that the trial judge abused his discretion in declaring a mistrial because he did not consider alternatives to the mistrial). One alternative that a trial court should consider before *sua sponte* declaring a mistrial is a trial continuance. *Jorn*, 400 U.S. at 487, 91 S.Ct. 547 (citing 22 U.S. (9 Wheat.) at 580). Furthermore, if a trial judge is aware of a potential problem that might lead to a mistrial, the judge should address the problem prior to empaneling the jury. *See United States v. Sartori*, 730 F.2d 973, 976 (4th Cir.1984).

In the instant case, the trial judge declared a mistrial *sua sponte* after the jury was empaneled because there was an insufficient number of potential jurors from which to select alternates. At the start of jury selection, several prospective jurors made it known that they were excused from jury service the following day. (Tr. # 1, 7). Counsel informed the trial court of the possibility of the trial carrying over to a second day. *Id.* After being informed of the potential shortage of jurors, the trial judge responded "[l]et's see if we don't cure this as we go." (Tr. # 1, 8). On three subsequent occasions, the trial judge acknowledged the potential juror shortage but each time responded that the problem might work out during jury selection. (Tr. # 1, 12, 27, 30). Repeatedly the trial judge relied on the fact that on the previous day a similar issue in his court had been cured. (Tr. # 1, 1, 12, 28). After strikes were administered, it was determined that one of the jurors excused for the following day had been selected to serve on the jury. (Tr. # 1, 38). At that point, the trial judge responded that he would address the problem. *Id.* However, before the judge attempted to cure the problem, the jury was empaneled and sworn. (Tr. # 1, 38–39). At first the trial judge attempted to fashion a cure outside the statutes governing jury selection, but when this failed, he abruptly declared a mistrial. (Tr. # 1, 48).

From the record, it is clear that, prior to the empaneling of the jury, the trial judge was aware of the potential problem that eventually led him to declare a mistrial. Despite this knowledge, the trial judge proceeded without considering any alternative solutions aside from attempting to cure the problem outside the governing jury selection statutes, as he had done in a trial the day before. Instead, a mistrial was declared so abruptly that no alternatives were discussed or could have been suggested by counsel. Of course, there were several obvious alternatives to a mistrial available. Prior to empaneling the jury, the trial judge could have brought in additional jurors and, if none were available, the trial could have been continued to another day. Other alternatives existed even after the jury was empaneled. The trial court could have begun the trial and if it did not conclude that day, a continuance could have been ordered until the jurors again were available. However, it is evident from the record that the trial judge did not consider or pursue any of these alternatives. Although the trial judge asked the jurors on at least three occasions who had been excused for the next day, he never questioned them as to their availability on other days.

Thus, despite the fact that several alternatives to a mistrial existed, including several that would have addressed the problem prior to the empaneling of the jury, the trial judge failed to consider any of the myriad of appropriate options aside from declaring a mistrial. In addition, we find it relevant that, despite these alternatives, the trial judge was determined to cure the problem through a method of jury selection outside those provided by the statutes governing jury selection. The trial judge did not take all of the surrounding circumstances into account when declaring a mistrial; thus, he failed to appropriately consider Washington's interest in having his trial concluded by the first jury empaneled to try him. We recognize that trial judges must often respond to the demands of a busy trial docket, anxious jurors focused on their own personal schedules, and witnesses waiting in the hall. The day before Washington's trial, the trial judge was apparently able to seat a jury with a limited venire and complete a trial without sacrificing the rights of the accused. On Washington's trial date, however, the judge's improvisation did not prevail and as the Court of Appeals reasoned that "[n]o matter the salutary motives of the original trial judge, the double jeopardy protections of the United States Constitution are mandatory." *Washington v. Commonwealth,* 35 Va.App. 202, 543 S.E.2d 638, 646 (2001). We conclude that there was no manifest necessity for the declaration of a mistrial in Washington's case.

### IV. Conclusion

The Court holds that Washington is entitled to a writ of habeas corpus because the Supreme Court of Virginia's decision was contrary to and involved an unreasonable application of clearly established federal law and the decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The writ must be granted for two reasons. First, the Supreme Court of Virginia refused to extend clearly established legal principles announced by the United States Supreme Court on double jeopardy to Washington's case and further relied on federal cases for propositions not stated therein. Second, the Supreme Court of Virginia was unreasonable in its determination of the facts because the court relied on facts clearly not supported by the record. The Court finds that the Supreme Court of Virginia's decision resulted in the deprivation of Washington's Fifth Amendment right against being twice placed in jeopardy.

In sum, because we find that Washington did not consent to the trial court's declaration of a mistrial for which there was no manifest necessity, the Constitution requires that we grant Washington the writ of habeas corpus. An appropriate Order shall issue.